## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN MISKA,<br>86 Lumber Lane,<br>Barboursville, VA 22923,<br><br>JOHN M. PAYDEN-TRAVERS,<br>1711 Link Road<br>Lynchburg, VA 24503<br><br>RACHEL Y. LAWLER,<br>45-05 21st Street, Apt 2B<br>Long Island City, NY 11101,<br><br>ABRAHAM J. BONOWITZ,<br>6315 Jason St.<br>Cheverly, MD  20785<br><br>HAROLD H. HODGE, JR.,<br>46960 Lei Dr.<br>Lexington Park, MD 20653,<br><br>FITZGERALD SCOTT,<br>887 Washington Blvd.<br>Beaumont, TX 77701,<br><br>MIDGELLE R. POTTS,<br>5179 N. Farm Rd. 125<br>Springfield, MO 65803,<br><br>       PLAINTIFFS<br>  vs.<br><br>PAMELA TALKIN,<br>*in her official capacity as Marshal of the*<br>*Supreme Court of the United States*,<br>1 First St., NE,<br>Washington, DC 20543,<br><br>RONALD C. MACHEN, JR.,<br>*in his official capacity as*<br>*U.S. Attorney for the District of Columbia*,<br>555 Fourth St., NW,<br>Washington, DC 20530,<br><br>       DEFENDANTS | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. By this action, Plaintiffs challenge the constitutionality of Regulation 7 on its face and as applied to their desired activities. Certain Plaintiffs also challenge Regulation 7 as a violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 ("RFRA").

2. Regulation 7 was promulgated by the United States Supreme Court on June 13, 2013, two days after this Court struck down 40 U.S.C. § 6135 on constitutional grounds.

3. Regulation 7 provides:

"This regulation is issued under the authority of 40 U.S.C. § 6102 to protect the Supreme Court building and grounds, and persons and property thereon, and to maintain suitable order and decorum within the Supreme Court building and grounds. Any person who fails to comply with this regulation may be subject to a fine and/or imprisonment pursuant to 40 U.S.C. § 6137. This regulation does not apply on the perimeter sidewalks on the Supreme Court grounds. The Supreme Court may also make exceptions to this regulation for activities related to its official functions.

No person shall engage in a demonstration within the Supreme Court building and grounds. The term "demonstration" includes demonstrations, picketing, speechmaking, marching, holding vigils or religious services and all other like forms of conduct that involve the communication or expression of views or grievances, engaged in by one or more persons, the conduct of which is reasonably likely to draw a crowd or onlookers. The term does not include casual use by visitors or tourists that is not reasonably likely to attract a crowd or onlookers."

4. All of the plaintiffs challenge Regulation 7 on its face as being overbroad and a violation of the First Amendment. All of the plaintiffs also challenge Regulation 7, in the alternative, as a violation of their First Amendment rights as applied to their desired conduct. Plaintiffs Ms. Potts and Mr. Payden-Travers additionally challenge Regulation 7 as a violation of RFRA.

## THE PARTIES

5. Plaintiff John Miska is a citizen of Virginia residing at 86 Lumber Lane, Barboursville, VA 22923.

6. Plaintiff John "Jack" M. Payden-Travers is a citizen of Virginia residing at 1711 Link Road, Lynchburg, VA 24503.

7. Plaintiff Rachel Lawler is a citizen of New York residing at 45-05 21st Street, Apt 2B, Long Island City, NY 11101.

8. Plaintiff Abraham J. Bonowitz is a citizen of Maryland residing at 6315 Jason St., Cheverly, MD 20785.

9. Plaintiff Harold H. Hodge, Jr. is a citizen of Maryland residing at 46960 Lei Drive, Lexington Park, MD.

10. Plaintiff Fitzgerald Scott is a citizen of Texas residing at 887 Washington Blvd., Beaumont, TX 77701.

11. Plaintiff Midgelle R. Potts is a citizen of Missouri 5179 N. Farm Rd. 125, Springfield, MO 65803.

12. Defendant Pamela Talkin is the Marshal of the Supreme Court of the United States. Marshal Talkin is the statutory officer charged and empowered under 28 U.S.C. § 672 to take charge of all property used by the Supreme Court of the United States and to oversee the Supreme Court Police. Marshal Talkin also is empowered by federal law, 40 U.S.C. § 6121, to police the United States Supreme Court Building and grounds. Marshal Talkin is sued in her official capacity.

13. Defendant Ronald C. Machen, Jr. is the United States Attorney for the District of Columbia. United States Attorney Machen is charged, pursuant to 40 U.S.C. §

6137(b), with prosecuting violations of regulations prescribed under 40 U.S.C. § 6102. United States Attorney Machen is sued in his official capacity.

## JURISDICTION AND VENUE

14. This action arises under the First and Fifth Amendments of the United States Constitution, "RFRA," and 40 U.S.C. § 6102. This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000bb-1(c).

15. The Court may grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Rules 57 and 65 of the Federal Rules of Civil Procedure, and its own inherent authority to restrain unlawful government actions.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because the defendants are officers or employees of the United States acting in their official capacity and a substantial part of the events giving rise to the claim occurred within the District of Columbia.

## FACTUAL ALLEGATIONS

*The Supreme Court Plaza*

17. The plaza area outside of the Supreme Court is oval in shape and approximately 252 feet in length. It is separated from the sidewalk between First Street, N.E., and the Supreme Court building grounds by a few small steps which lead up about 3 feet to the plaza. As a large, open space, the Supreme Court Plaza is no different than other traditional public fora such as parks and sidewalk.

18. The Supreme Court plaza has historically been used for First Amendment activities. Litigants and their attorneys have been and are permitted to hold press conferences and make speeches on the plaza. Tourists and attorneys on the plaza waiting in line to attend oral arguments are permitted to engage in conversations about matters before the Supreme Court. More recently, commercial film crews have been allowed to shoot scenes for movies on the plaza of the Supreme Court.

19. The Supreme Court plaza is open to the public 24 hours a day, except under special circumstances when it is closed by the Marshal. The public is free to enter and leave the Supreme Court plaza at all hours.

20. There is no gate, fence, or marking that serves to distinguish the Supreme Court plaza as a special enclave within which First Amendment activity is not permitted.

*Plaintiffs Lawler's and Payden-Travers' Previous Activities*

21. On the morning of January 17, 2007, Ms. Lawler, Mr. Payden-Travers and four other individuals were standing with a group of people in front of the Supreme Court, waiting in line to be admitted to the building to hear oral arguments.

22. At 10:46 a.m., Officer Timothy Quigley of the Supreme Court Police saw Ms. Lawler, Mr. Payden-Travers, and the four other individuals step out of line on the plaza and unfurl a large banner that read "STOP EXECUTIONS."

23. Ms. Lawler, Mr. Payden-Travers, and the other four individuals stood behind the banner and joined in a chant, saying, "What do we want? Abolition. When do we want it? Now."

24. On January 17, 2012, Mr. Payden-Travers was on the steps of the Supreme Court again holding a banner that read "STOP EXECUTIONS."

*Plaintiff Bonowitz's Previous Activity*

25. On January 17, 1997, Mr. Bonowitz and other individuals were demonstrating on the sidewalk below the Supreme Court plaza area.

26. Shortly thereafter, Mr. Bonowitz and the other individuals began to move as a group inside the plaza area to the top of the steps leading to the Court's main entrance.

27. Once Mr. Bonowitz and the other individuals reached the main entrance, they unfurled a banner thirty feet long by four feet wide which read "STOP EXECUTIONS," and they began to sing and chant in unison.

*Plaintiff Hodge's Previous Activity*

28. On January 28, 2011, at approximately 11:35 a.m., Mr. Hodge went to the site of the Supreme Court of the United States located at the corner of First Street, N.E., and East Capitol Street, N.E., within the District of Columbia.

29. At that time, Mr. Hodge had hanging from his neck a sign approximately 3 feet long and 2 feet wide, which had the following written upon it: "The U.S. Gov. Allows Police To Illegally Murder And Brutalize African Americans And Hispanic People." Hodge's purpose in going to this site and wearing the sign was to engage in expression on a political matter of public interest and importance and to raise public awareness about the adverse treatment of minorities by law enforcement.

30. Mr. Hodge approached the Supreme Court building from the west, crossing First Street, N.E., then crossing the sidewalk between First Street, N.E., and then proceeding up the steps leading up to the plaza in front of the Supreme Court building.

31. Mr. Hodge then stood quietly and peacefully upon the plaza area near the steps leading to the sidewalk in front of the Supreme Court Building, approximately 100 feet from the doors of the main entrance leading into the Supreme Court Building.

*Plaintiff Scott's Previous Activity*

32. On January 20, 2012, Mr. Scott entered the United States Supreme Court building, along with several acquaintances, to look at some of the exhibitions that were on display.

33. When Mr. Scott entered the building, he removed his coat and jacket, but while looking at the exhibits, he put his jacket back on.

34. Mr. Scott's jacket had the words "Occupy Everywhere" painted on it.

35. A Supreme Court Police officer told Mr. Scott that he could not wear his jacket inside the building. In response, Mr. Scott put his coat on over the jacket so that the words written on the jacket were no longer visible.

36. Mr. Scott looked at several more exhibits and while looking at an exhibit about slavery, took his coat off, revealing the jacket emblazoned with the protest slogan.

*Plaintiff Potts' Previous Activity*

37. Ms. Potts was at the Supreme Court on February 9, 2005, as part of a small group protesting the mistreatment of prisoners at the Abu Ghraib and Guantanamo Bay prisons and the appointment of Alberto Gonzales as Attorney General.

38. To dramatize their cause, Ms. Potts was wearing a black hood.

39. In the course of the protest, Ms. Potts and the other protesters ascended several steps from the sidewalk to the plaza in front of the Supreme Court building. Supreme Court Police repeatedly asked appellants to return to the sidewalk and arrested them when they refused to do so.

*Plaintiffs' Desired Future Activities*

40. Mr. Miska desires to go to the plaza area in front of the Supreme Court and meet with members of the public to voice awareness of veterans' issues and inform the public about cases from the military judicial system being appealed to the Supreme Court; distribute informative papers/leaflets/fliers reflecting these issues; and organize veterans to appear on the Supreme Court's plaza to meet and disseminate information about these issues by making speeches and distributing literature.

41. Mr. Payden-Travers desires to return to the plaza area in front of the Supreme Court and engage in peaceful, non-disruptive political speech and expression in a similar manner to his activity on January 17, 2007 and January 17, 2012.

42. In addition to repeating his previous conduct, Mr. Payden-Travers also desires to engage in the following activities at the Supreme Court's plaza: holding a non-violent, peaceful candlelight vigil on the plaza of the Supreme Court; and verbally

expressing his view that the practice of executing individuals should be halted and that capital punishment should be abolished.

43. Ms. Lawler desires to return to the plaza area in front of the Supreme Court and engage in peaceful, non-disruptive political speech and expression in a similar manner to her activity on January 17, 2007.

44. In addition to repeating her previous conduct, Ms. Lawler also desires to engage in the following activities at the Supreme Court's plaza: holding a banner or sign on the grounds of the Court; praying with a group of others; wearing a shirt with her opinions on a social justice issue; after attending a conference or other event where people are wearing clothing that expresses an opinion on a social justice issue, walking on the plaza of the Supreme Court together in a manner which might attract a crowd or onlookers; holding a non-violent, peaceful candlelight vigil on the plaza of the Supreme Court; and speaking to an individual or group of tourists or others on the Supreme Court's plaza about her opinion on an array of issues.

45. Mr. Bonowitz desires to return to the plaza area in front of the Supreme Court and engage in peaceful, non-disruptive political speech and expression in a similar manner to his activity on January 17, 1997.

46. In addition to repeating his previous conduct, Mr. Bonowitz also desires to engage in the following activities at the Supreme Court's plaza: standing and walking on the plaza while wearing a t-shirt with a message printed on it calling attention to the injustice of the death penalty; unobtrusively standing in one place by himself holding a sign of limited size calling attention to the issue; distributing paper brochures about the issue with other individuals present on the plaza; approaching and speaking in a

conversational volume with other individuals present on the plaza about the death penalty; orating about the death penalty on the plaza; and asking other individuals on the plaza to sign a petition or letter to policy makers calling for an end to the death penalty.

47. Mr. Hodge desires to return to the plaza area in front of the Supreme Court building and engage in peaceful, non-disruptive political speech and expression in a similar manner to his activity on January 28, 2011.

48. In addition to wearing a sign while on the Supreme Court Plaza as he did before, Mr. Hodge also desires to return to the plaza area in front of the Supreme Court building and picket, hand out leaflets, sing, chant, and make speeches, either by himself or with a group of like-minded individuals.  The political message that Mr. Hodge would like to convey would be directed both at the Supreme Court and the general public, and would explain how decisions of the Supreme Court have allowed police misconduct and discrimination against racial minorities to continue.

49. Mr. Scott desires to return to the Supreme Court building and engage in the same conduct as he did on January 20, 2012 when he wore a jacket with the phrase "Occupy Everywhere" inside the courthouse and on the plaza.

50. Ms. Potts desires to return to the plaza area in front of the Supreme Court building and engage in peaceful, non-disruptive political speech and expression in a similar manner to her activity on February 9, 2005.

51. In addition to repeating her previous conduct, Ms. Potts also desires to return to the plaza area in front of the Supreme Court building to conduct a prayer vigil that includes singing and chanting.

52. The plaintiffs desire to engage in the activities described herein, but are deterred and chilled from doing so because of the terms of Regulation 7.

*The Burden on Plaintiff Payden-Travers' Exercise of Religion*

53. Plaintiff Payden-Travers is a post-denominational Christian, and Executive Director of the National Campaign for a Peace Tax Fund.

54. The National Campaign for a Peace Tax Fund (NCPTF), based in Washington, D.C., is a not-for-profit 501(c)(4) organization which advocates for passage of the Religious Freedom Peace Tax Fund Act.

55. Mr. Payden-Travers and his wife, Rev. Christine Payden-Travers, oppose the use of tax dollars paying for war and executions.

56. Mr. Payden-Travers frequently speaks at houses of worship to promote peace.

57. Mr. Payden-Travers' deeply held beliefs led him to demonstrate in January 2007 on the plaza of the US Supreme Court on the 30th anniversary of the execution of Gary Gilmore, the first man to die in the modern era of the death penalty. Mr. Payden-Travers' was arrested for demonstrating there.

58. Mr. Payden-Travers' faith compels him to speak out against war and the death penalty in order to publicly distance himself from the commission of these acts by the government in the name of the American public.

59. Mr. Payden-Travers' faith also compels him to pray for an end to the death penalty.

60. Consistent with his religious beliefs, Mr. Payden-Travers seeks to hold candlelight vigils on the plaza of the Supreme Court on nights when executions are taking place, as an exercise of his religion.

61. Regulation 7 forces Mr. Payden-Travers to choose between the free exercise of religion and his desire to avoid criminal penalties.

*The Burden on Plaintiff Potts' Exercise of Religion*

62. Plaintiff Midgelle Potts is a Unity Christian and a member of Unity Spiritual Center in Springfield, MO.

63. Ms. Potts' faith compels her to speak out against torture, war, and the death penalty in order to make clear that she does not endorse the use of her tax dollars to fund torture, war, and executions.

64. Ms. Potts' faith also compels her to pray for an end to torture, war, and the death penalty.

65. Consistent with her religious beliefs, Ms. Potts seeks to hold prayer vigils on the plaza of the Supreme Court as an exercise of her religion.

66. Regulation 7 forces Ms. Potts to choose between the free exercise of religion and her desire to avoid criminal penalties.

## COUNT I: FIRST AMENDMENT

67. Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

68. Regulation 7 is facially unconstitutional because it violates the guarantee of the First Amendment to the United States Constitution to freedom of speech, freedom of assembly, and freedom to petition the government for a redress of grievances.

69. Regulation 7 is unconstitutional as applied to the plaintiffs' desired conduct because its application in such circumstances would violate the guarantee of the First Amendment to the United States Constitution to freedom of speech, freedom of assembly, and freedom to petition the government for a redress of grievances.

### COUNT II: FIRST AMENDMENT (OVERBREADTH)

70. Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

71. Regulation 7 is facially unconstitutional because it prohibits a substantial amount of protected speech, in violation of the First Amendment to the United States Constitution.

### COUNT III: FIRST & FIFTH AMENDMENT (VAGUENESS)

72. Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

73. Regulation 7 is void for vagueness on its face because it violates the First and Fifth Amendment to the United States Constitution.

74. Regulation 7 is unconstitutional as applied to the plaintiffs' desired conduct because its application in such circumstances vests unfettered discretion to law enforcement officials and fails to provide adequate notice of the conduct that it prohibits.

## COUNT IV: RELIGIOUS FREEDOM RESTORATION ACT

75. Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

76. Plaintiffs Mr. Payden-Travers and Ms. Potts challenge Regulation 7 as a violation of the Religious Freedom Restoration Act.  Regulation 7 places a substantial burden on the exercise of their religion and is neither justified by a compelling government interest nor the least-restrictive means of accomplishing the government's objective.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor as follows:

1. Declaring Regulation 7 unconstitutional on its face, and as applied to Plaintiffs, because it violates the First and Fifth Amendments to the United States Constitution;

2. Declaring Regulation 7 an unlawful violation of the Religious Freedom Restoration Act as applied to Plaintiff Payden-Travers' and Potts' desired conduct;

3. Striking down Regulation 7 in its entirety;

4. Permanently enjoining Defendants from arresting or criminally prosecuting Plaintiffs for violating Regulation 7;

5. Awarding Plaintiffs their costs and attorney fees pursuant to 28 U.S.C. § 2412; and

6. Granting such other and further relief as the Court may deem just and proper.

                                                            /s/ Jeffrey L. Light

                                                    Jeffrey L. Light
                                                    D.C. Bar #485360
                                                    1712 Eye St., NW
                                                    Suite 915
                                                    Washington, DC 20006
                                                    (202)277-6213
                                                    Jeffrey.Light@yahoo.com

                                                    *Counsel for Plaintiffs and*
                                                    *Participating Attorney for*
                                                    *The Rutherford Institute*