# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN M. PAYDEN-TRAVERS, *et al.*,<br>    Plaintiffs<br>    v.<br>PAMELA TALKIN, *et al.*,<br>    Defendants | Civil Action No. 13-1735 (CKK) |

## MEMORANDUM OPINION
(May 31, 2017)

The Plaintiffs in this case contend that 40 U.S.C. § 6135 and a related regulation promulgated by the United States Supreme Court unlawfully restrict their ability to exercise their religion on the Supreme Court Plaza, in violation of the Religious Freedom Restoration Act ("RFRA"). Section 6135 provides that "[i]t is unlawful to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, or to display in the Building and grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization, or movement." Similarly, Supreme Court Regulation 7 prohibits "demonstrations" on Supreme Court grounds, which Plaintiffs allege encompasses certain religiously-motivated vigils and other activities they seek to engage in.

Before the Court is Defendants' [15] Motion to Dismiss. Defendants argue that the First Amended Complaint should be dismissed because Plaintiffs fail to plead that section 6135 or Regulation 7 substantially burden the exercise of their religion. In the alternative, Defendants contend that the complaint should be dismissed because section 6135 and Regulation 7 are the least restrictive means of furthering a compelling government interest. Upon consideration of

the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court concludes that

Plaintiffs' RFRA claim fails at the threshold because section 6135 and Regulation 7 do not

substantially burden Plaintiffs' exercise of religion. The Court will accordingly GRANT

Defendants' [15] Motion to Dismiss.

## I. BACKGROUND

### A. Procedural History

Plaintiffs filed their original complaint in this case on November 4, 2013. *See* Compl. for

Declaratory and Injunctive Relief, ECF No. 1. In that complaint, Plaintiffs alleged that

Regulation 7 violated the First Amendment's freedom of speech, freedom of assembly and

freedom to petition guarantees, was overbroad, unconstitutionally vague in violation of the Fifth

Amendment, and violated the RFRA. *Id.* at ¶¶ 67-76.

On the same day, Plaintiffs filed a notice informing the Court that this case was related to

a separate matter, *Hodge v. Talkin*, 12-cv-104 (BAH). *See* Notice of Related Case, ECF No. 2.

On January 27, 2014, Defendants filed an unopposed motion to stay this case pending the final

resolution of the *Hodge* matter, which was at that time before the Court of Appeals for the

District of Columbia Circuit ("D.C. Circuit"). *See* Defs.' Unopposed Mot. for Stay, ECF No. 10.

Defendants represented that both cases presented First Amendment challenges to restrictions on

demonstrations on the Supreme Court Plaza and, as such, that the D.C. Circuit's opinion in

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 15;
- Pls.' Mem. in Opp'n to Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 17; and
- Defs.' Reply in Support of Mot. to Dismiss ("Defs.' Reply"), ECF No. 18.

In an exercise of its discretion, the Court finds that holding oral argument in this action would
not be of assistance in rendering a decision. *See* LCvR 7(f).

*Hodge* would likely inform the Court's analysis in this case. *Id.* The Court agreed and stayed this case pending the resolution of *Hodge*. *See* Order (January 28, 2014), ECF No. 11.

The Court lifted the stay in this case after the D.C. Circuit issued its decision in *Hodge* and the Supreme Court denied a petition for writ of certiorari. *See* Min. Order (May 18, 2016). As predicted, the D.C. Circuit's opinion in *Hodge* had significant implications for Plaintiffs' claims in this case. In *Hodge*, the D.C. Circuit rejected the plaintiff's claim that section 6135 violated the First Amendment because it prevented him from engaging in certain expressive political activity on the Supreme Court Plaza. *See Hodge v. Talkin*, 799 F.3d 1145, 1150 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2009 (2016). First, the court found that the Supreme Court Plaza was not a public forum, and that as such the government was free to impose reasonable restrictions on speech on the Plaza so long as it refrained from suppressing particular viewpoints. *Id.* Second, the court held that section 6135 did not violate the First Amendment because it did not target specific viewpoints, and its restrictions reasonably served the government's "long-recognized interests in preserving decorum in the area of a courthouse and in assuring the appearance (and actuality) of a judiciary uninfluenced by public opinion and pressure." *Id.* The court also rejected plaintiff's overbreadth and vagueness challenges to the statute. *Id.* at 1170-73.

On June 24, 2016, Plaintiffs filed the now-operative First Amended Complaint. *See* First Am. Compl. for Declaratory and Injunctive Relief, ECF No. 13 ("Am. Compl."). Presumably in light of the D.C. Circuit's opinion in *Hodge*, Plaintiffs have dropped their First and Fifth Amendment claims, and now only assert a single count under the RFRA.

**B. Factual Allegations in the First Amended Complaint**

The Supreme Court Plaza is a large, oval-shaped open space in front of the United States Supreme Court. Am. Compl. at ¶ 12. It is separated from the sidewalk on First Street, N.E. by a few small steps. *Id.* As outlined in Plaintiffs' First Amended Complaint, numerous individuals over the years have attempted to use the Supreme Court Plaza as a place to pray or demonstrate, and these attempts have often been frustrated. *Id.* ¶¶ 13-21.

On June 13, 2013, the United States Supreme Court promulgated Regulation 7, which reads:

> This regulation is issued under the authority of 40 U.S.C. § 6102 to protect the Supreme Court building and grounds, and persons and property thereon, and to maintain suitable order and decorum within the Supreme Court building and grounds. Any person who fails to comply with this regulation may be subject to a fine and/or imprisonment pursuant to 40 U.S.C. § 6137. This regulation does not apply on the perimeter sidewalks on the Supreme Court grounds. The Supreme Court may also make exceptions to this regulation for activities related to its official functions.

> No person shall engage in a demonstration within the Supreme Court building and grounds. The term "demonstration" includes demonstrations, picketing, speechmaking, marching, holding vigils or religious services and all other like forms of conduct that involve the communication or expression of views or grievances, engaged in by one or more persons, the conduct of which is reasonably likely to draw a crowd or onlookers. The term does not include casual use by visitors or tourists that is not reasonably likely to attract a crowd or onlookers.

*Id.* ¶ 4.

Plaintiffs allege that Regulation 7, together with 40 U.S.C. § 6135, substantially burdens the exercise of their religions. Plaintiff John M. Payden-Travers alleges that he is a "post-denominational Christian." *Id.* ¶ 22. He alleges that he is the former Executive Director of an organization that lobbies for the passage of legislation that would allow the tax payments of individuals who are opposed to war based on their religious or ethical beliefs to be directed for non-military purposes. *Id.* ¶¶ 22-24. Mr. Payden-Travers is himself opposed to the use of tax

dollars for war or executions, and alleges that these positions are religiously motivated. *Id.* ¶¶ 26-28. Mr. Payden-Travers alleges that his "faith compels him to speak out against war and the death penalty in order to publicly distance himself from the commission of these acts by the government in the name of the American public." *Id.* ¶ 34. As such, Mr. Payden-Travers has on two past occasions gone to the Supreme Court Plaza and stood with a banner that reads "STOP EXECUTIONS," and has also chanted outside the Supreme Court in support of abolishing the death penalty. *Id.* ¶¶ 29-33. Mr. Payden-Travers alleges that his "deeply held beliefs led him to demonstrate." *Id.* ¶ 29. In the future, Mr. Payden-Travers desires to hold peaceful candlelight vigils on the Supreme Court Plaza on nights when executions are taking place, and verbally express his view that capital punishment should be abolished. *Id.* ¶ 35. He contends that a vigil on the sidewalk adjacent to the Supreme Court "would not be sufficient to demonstrate to passersby that Mr. Payden-Travers is acting [as] a conscientious objector to the Supreme Court's allowance of the immoral death penalty to continue." *Id.* ¶ 36.

Plaintiff Midgelle Potts alleges that she is a "Unity Christian." *Id.* ¶ 37. One of the basic tenets of Ms. Potts' religion is that "knowledge of . . . spiritual principles is not enough; spirituality must be lived." *Id.* ¶ 38. Ms. Potts alleges that her faith compels her to both pray and speak out against torture, war and the death penalty. *Id.* ¶ 39. To make clear that she does not endorse the use of her tax dollars to fund torture, war or executions, Ms. Potts engages in the religious practice of "bearing public witness," which she defines as the "intentional act of offering one's perspective to the wider community." *Id.* ¶¶ 40-42. She provides "participating in a public prayer vigil or peace walk" as "[a]n example" of the practice. *Id.* ¶ 41. In accordance with these religious beliefs, Ms. Potts previously protested the mistreatment of prisoners at the Abu Ghraib and Guantanamo Bay prisons, and the appointment of Alberto Gonzales as Attorney

General, while wearing a black hood at the Supreme Court Plaza.  *Id.* ¶¶ 43-44.  In the future, Ms. Potts desires to hold prayer vigils on the Supreme Court Plaza, "as an exercise of her religion."  *Id.* ¶ 46.  She contends that a vigil on the sidewalk adjacent to the Supreme Court "would not be a sufficient exercise of Ms. Potts' religious teachings because the Supreme Court Plaza is a distinct enclave, and the public would not sufficiently identify her actions with the Court if the prayer vigil were conducted on the sidewalk."  *Id.* ¶ 47.

## II. LEGAL STANDARD

Pursuant to Federal Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

The RFRA prohibits the government from "substantially burden[ing] a person's exercise of religion" unless the government "demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)-(b).  Defendants argue that Plaintiffs' RFRA claim must be dismissed because Plaintiffs cannot make the

threshold showing that the statute and regulation at issue "substantially burden" Plaintiffs' exercise of religion. The Court agrees.

"[T]he first inquiry under RFRA is whether a government act has substantially burdened the plaintiff's religious exercise." *Wilson v. James*, 139 F. Supp. 3d 410, 424 (D.D.C. 2015), *aff'd*, No. 15-5338, 2016 WL 3043746 (D.C. Cir. May 17, 2016), *cert. denied*, 137 S. Ct. 695, 196 L. Ed. 2d 529 (2017). "A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting *Thomas v. Review Bd.,* 450 U.S. 707, 718 (1981)). An inconsequential or *de minimis* burden on religious practice, such as when the government merely restricts "'one of a multitude of means' by which the [plaintiffs] could engage in their" religious exercise, does not suffice. *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011) (quoting *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001)).[2] Accordingly, "[t]he Court of Appeals has found that a neutral regulation that places a limit on where someone may engage in religiously motivated expression does not violate RFRA." *Wilson*, 139 F. Supp. 3d at 425.

The Court's conclusion that section 6135 and Regulation 7 do not "substantially burden" Plaintiffs' exercise of religion is informed by a number of opinions from this Circuit that have addressed RFRA claims very similar to those presented here. First, in *Henderson v. Kennedy*, evangelical Christian plaintiffs claimed that a National Park Service regulation that would forbid

---

[2] The Court notes that determining whether section 6135 and Regulation 7 substantially burden Plaintiffs' religious exercise at the pleading stage is appropriate despite Plaintiffs' allegation that these restrictions "place a substantial burden on the exercise of their religion," Am. Compl. ¶ 49, because although the Court accepts "as true the factual allegations that [Plaintiffs'] beliefs are sincere and of a religious nature," it need not accept "the legal conclusion, cast as a factual allegation, that [their] religious exercise is substantially burdened." *Kaemmerling*, 553 F.3d at 679.

them from selling religious t-shirts on the National Mall violated the RFRA. *Henderson*, 253 F.3d at 13. The plaintiffs in *Henderson* alleged that they held "the sincere religious belief that [they were] obliged by the Great Commission to preach the good news, the gospel, of salvation through Jesus Christ to the whole world." *Id.* at 15. They argued that the Park Service regulation substantially burdened the exercise of their religion because they had "a religious vocation to communicate by all available means the message of the Gospel," and selling t-shirts was part of their religious "outreaches." *Id.*

The D.C. Circuit held that the t-shirt ban did not "substantially burden" plaintiffs' exercise of religion for the purposes of the RFRA. *Id.* at 16. The court explained that plaintiffs could not "claim that the regulation force[d] them to engage in conduct that their religion forbid[ ] or that it prevent[ed] them from engaging in conduct their religion require[d]." *Id.* The court acknowledged that the plaintiffs' desire to sell t-shirts might have been religiously *motivated*, but expressly rejected an interpretation of the RFRA that would make forcing "adherents of a religion to refrain from religiously motivated conduct" a sufficient basis for demonstrating a "substantial burden" on the exercise of religion. *Id.* at 17. Most importantly for the purposes of this case, the *Henderson* court reasoned that the ban was not a substantial burden on the plaintiffs' exercise of religion because it was "at most a restriction on one of a multitude of means" by which the plaintiffs could engage in their religious activity. *Id.*

The D.C. Circuit subsequently revisited this issue in *Mahoney v. Doe*, wherein plaintiffs challenged a "Defacement Statute" that prevented them from "chalking" the street in front of the White House to protest President Barack H. Obama's position on abortion. 642 F.3d 1112, 1114 (D.C. Cir. 2011). The district court had dismissed plaintiffs' First Amendment and RFRA claims. *Id.* With respect to the RFRA, the district court accepted plaintiffs' position that the

"proposed chalking was motivated by a sincere religious belief," but nonetheless rejected their claim because the plaintiffs "did not establish chalk was the exclusive medium through which Mahoney could express his religious views." *Id.* at 1120-21.

The Court of Appeals agreed. Citing *Henderson*, that court held that there was no substantial burden on the exercise of religion because "the District's threatened use of the Defacement Statute prohibits only 'one of a multitude of means' of conveying Mahoney's religious message." *Id.* at 1121. It explained that "Mahoney may still spread his message through picketing, a public prayer vigil, or other similar activities in which he has previously engaged" and that "[t]he Defacement Statute does not realistically prevent Mahoney from chalking elsewhere. . ." *Id.*

Finally, in *Mahoney v. U.S. Marshals Serv.*, plaintiffs alleged that security measures implemented by the United States Marshals Service at the annual Red Mass in Washington, D.C. violated the RFRA because they restricted plaintiffs' ability to demonstrate at the event. 454 F. Supp. 2d 21, 27-30 (D.D.C. 2006). The plaintiffs alleged that their religion "'demand[ed] of [them] that [they] pursue obedience to the biblical command not to remove the ancient landmarks, including the Ten Commandments,' from public places." *Id.* at 27. In accordance with that demand, plaintiffs sought to demonstrate outside of the Red Mass in order to "convey their message to the many jurists in attendance, by, among other means, carrying signs and praying as a group." *Id.* at 28.

Plaintiffs brought suit against the United States Marshals Service under the First and Fifth Amendments and the RFRA and the district court granted summary judgment for defendants. *Id.* at 38. The reasoning underlying the court's rejection of plaintiffs' RFRA claim in particular is instructive in this case:

> Plaintiffs have alleged that they wish to engage in speech about religion and that this desire is motivated by their religious beliefs, but they have not alleged that this is part of the exercise of their religion. Most importantly, they do not allege that their religion compels them to engage in this speech at the time and place and in the manner at issue here. They certainly do not allege that their religion compels them to demonstrate in favor of the public display of the Ten Commandments at all times and in all places, and they offer no evidence that their religion requires them to demonstrate at this particular time and place as compared to all others.
>
> Instead, their evidence confirms the notion that plaintiffs wish to demonstrate at the Red Mass because it provides a target-rich audience of prominent government officials, at whom plaintiffs wish to direct their political message. This is a classic case of speech on an issue of public interest, not a case of religious exercise.

*Id.* Accordingly, the Court concluded that "[p]laintiffs ha[d] not properly alleged that their religious exercise ha[d] been substantially burdened." *Id.*; *see also Wilson*, 139 F. Supp. 3d at 425 (holding that a letter of reprimand did not substantially burden plaintiff's exercise of religion because it "did not bar him from voicing his [religiously motivated] opposition to same-sex marriage in other fora or by other means").

These cases demonstrate the inherent flaws in Plaintiffs' RFRA claim. Like the plaintiffs in these cases, Plaintiffs do not claim that their religions require them to engage in the precise conduct they allege is prohibited—in this case holding vigils or demonstrating on the Supreme Court Plaza. Plaintiffs describe their religious convictions much more broadly. Plaintiff Payden-Travers alleges that his "faith compels him to speak out against war and the death penalty in order to publicly distance himself from the commission of these acts by the government in the name of the American public." Am. Compl. ¶ 34. Plaintiff Potts alleges that her faith compels her to both pray and speak out against torture, war and the death penalty. *Id.* ¶ 39. Plaintiffs allege that *one way* in which they have sought to accomplish these requirements of their religions is by praying or demonstrating at the Supreme Court Plaza, and both desire to do so again in the future. However, Plaintiffs have not alleged that this is the *only way* or *only place*

Plaintiffs could pursue these religious convictions, and it is clearly not. Plaintiffs could speak out against and distance themselves from torture, war or the death penalty in countless ways.

One example of an alternative suggested by the Defendants, which the Court finds reasonable, is for Plaintiffs to pray or hold vigils on the sidewalk adjacent to the Supreme Court Plaza. Plaintiffs respond that praying or demonstrating on the adjacent sidewalk would be insufficient because "it is essential to both Mr. Payden-Travers' and Ms. Potts' religious exercise that it take place in a location which passersby and the public will sufficiently associate . . . with the Court." Pls.' Opp'n at 3. This argument appears to be premised on a mischaracterization of the allegations in Plaintiffs' First Amended Complaint. Plaintiffs do not allege in their complaint that their religions require them to demonstrate and pray in ways such that the public will associate their activities with the United States Supreme Court. It simply alleges that their religions require them to "speak out" and "distance themselves" from certain practices, such as the death penalty. Even accepting *arguendo* Plaintiffs' contention that there are issues with Defendants' one proposed alternative, there are still countless other means by which Plaintiffs could satisfy this religious obligation, many of which may have nothing to do with the Supreme Court at all. Section 6135 and Regulation 7 prohibit only one.

Accordingly, although section 6135 and Regulation 7 prevent Plaintiffs from engaging in religiously motivated conduct at a particular location, the Court concludes that they do not "substantially burden" Plaintiffs' religious exercise. In doing so, the Court passes no judgment on the sincerity or legitimacy of Plaintiffs' religious beliefs. The Court merely holds that section 6135 and Regulation 7 do not violate the RFRA because they restrict only one of a multitude of means by which Plaintiffs could engage in their religiously motivated activity. Having found that Plaintiffs cannot make this threshold showing, the Court need not reach Defendants'

alternative argument that section 6135 and Regulation 7 are the least restrictive means of furthering a compelling government interest.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [15] Motion to Dismiss and DISMISSES Plaintiffs' complaint. An appropriate Order accompanies this Memorandum Opinion.

Dated: May 31, 2017

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
